We'll hear our argument now in the case of United States v. Gasich. Mr. Henderson. Thank you, Your Honor. May it please the Court. I'm Peter Henderson. I represent Barbara Gasich. With me is Mr. Schlesinger, who represents George Gasich, although I'll be arguing on both their behalves this morning. The issue in this case is the validity of the guilty pleas that the Gasich has entered, and, of course, that's subject to a multifactor test that we've analyzed in our briefing. There are two features of this case that I think are noteworthy and set this case apart from many other cases where defendants attempt to withdraw a guilty plea. The first is that we do have expert medical testimony in this case as to both of the Gasich's conditions at the time they entered their guilty plea. Dr. Stuart Burstein testified, and his testimony was unrebutted by, for example, the government's expert, that both the Gasich's were under a tremendous amount of emotional distress, that their anxiety and their depression led them to essentially acquiesce in these charges when faced with the ultimate decision of, we've got trial around the corner. That testimony is worth something. The Court, of course, has in the past asked for this sort of evidence in support of a motion to withdraw the guilty plea. And I think the district court erred, in a sense, in relying on his own lay perception of what was going on in the courtroom and excluded the, essentially discredited the expert. I think the expert's testimony is worth a little more than that. The other aspect of this case that's slightly different deals with the complexity of the charge. And what most of this drama, of course, occurred during Barbara's change of plea hearing. George was sitting in the courtroom. But Barbara routinely testified and inquired about matters relating to what rights she had and what rights she was giving up. So the first episode we see is her not being sure what appellate rights she might be waiving. And there was a great deal of confusion, and eventually she acquiesced, as the doctor testified she would. But the second has to do with the charge itself. What the Gesich's contended throughout in their pro se pleadings and at this change of plea hearing was that they believed what they had done was a legitimate way to offset tax liability with the IRS. They believed that filing these claims through this 1099 OID form was a legitimate way to offset their tax liability. Now, it wasn't, and that much is clear to, I think, most people in this room. But that would be a question of fact that would bear potentially on their guilt. Now, what this court said maybe 20 years ago was that willfulness is not a part of Section 287 claims. And the reason the court gave for that was that, well, if you file a false claim with the government, then it's necessarily fraudulent. And so we don't need to get into willfulness because it's inherent in filing a false claim. You mentioned 20 years. Coincidentally, it's about how long they've been protesting taxes. Well, that's certainly the government's. It's not like they're new to this issue. They have lots and lots of challenges along the way, right? No, that's certainly right. And what I would expect is at a trial, the government would urge the jury to say, of course they didn't believe this. They're trying to get around the taxes. You cannot credit their self-serving statements. But when we're talking about a change of plea as to whether they are knowingly and voluntarily pleading guilty, if they think they've done nothing wrong, that's a problem with a guilty plea. And this would be a case to test the court's earlier assumptions, to say, yes, I admit I filed a false claim, but it wasn't to defraud the United States. So should the court change positions? Should we preserve this for the Supreme Court? All of those sorts of factual assertions in this case might be tested in later courts. But, of course, those appellate rights are gone. We can't challenge that right now. And the discussion of what appellate rights would go away was very confused. Apart from that, we've laid out all the factors. They were, of course, pro se for much of the case. They didn't have the assistance of counsel. Whose choice was that? Well, that was, of course, their choice. One of the important parts of Ferretta is that somebody who chooses to proceed pro se can't argue an effective assistance of counsel. No, certainly not. When you choose to proceed pro se, you can't argue, I wasn't a very good lawyer, so let's do it again. No. Absolutely fundamental. I agree with that. And the point that I would make is when we're analyzing whether a defendant enters a knowing and voluntary plea, that is important to see, did they know what they were doing? Because, clearly, there were a number of misconceptions of the law in this case by these defendants. Well, but that's just within the scope of Ferretta. The Supreme Court has said that if you are intelligent enough to waive counsel, you're intelligent enough to plead guilty. So your argument now, which seems to be that your clients were not intelligent enough to plead guilty, logically implies that they couldn't even have waived counsel, that they could have been compelled to have counsel against their wishes. Indeed, the district judge had to compel them to have counsel against their wishes. But that doesn't seem to be a plausible argument. No, and that's not the argument I'm making. But the Supreme Court said they'd go together. If you have enough intelligence to waive counsel, you have enough intelligence to plead guilty. Yes, Your Honor. And the point that I'm making is when it comes to a knowing plea, that means you know what you're pleading guilty to. You know how the law applies to the facts as you know them. And our contention in this case is that the Gaysages were confused on that score, and the district judge did not do enough to clear up that confusion during the Rule 11 colloquy. If there are no further questions, I'll save the remainder of my time for rebuttal. Thank you, Your Honors. Thank you, Mr. Henderson. Mr. Whalen. Good morning, Your Honors. May it please the Court. My name is Nathaniel Whalen, and I'm here on behalf of the United States of America. The Gaysages appear to be focusing on two main arguments, which I'll address here. The first is Dr. Bernstein's report. Their position seems to be that the district court didn't give it any weight and just kind of dismissed it out of hands. That's not what happened in this case, Your Honor. If you look at the district court's second order denying their motion to withdraw, the district court says, I've read the report, and, in fact, it engages with the report's conclusion. It looks at the global assessment of functioning score that Dr. Bernstein said the Gaysages had, and it cited this court's precedent saying the GAF, or global assessment of functioning, is no longer considered reliable. So right there, the district court had a very valid reason to discount Dr. Bernstein's report. But then the district court goes further and says, even if the GAF is still reliable, these particular defendant scores, which range in the 60 to 50 on a scale of 1 to 100, are not so low as to render their pleas involuntary. And that's according to the DSM, which Dr. Bernstein relied on, the Diagnostic and Statistic Manual that psychiatrists and psychologists typically rely upon. So the district court considered the report. It just found it wasn't enough to convince him otherwise that their pleas were involuntary. And there's no clear error in that conclusion. Now, the second thing that the Gaysages appear to be relying on is that 287 is a complex statute because they might have had some defense. The problem with that argument is, as they acknowledge, this court's precedent has been clear for 20 years that there's no willfulness element in 287. So when they say the district court should have explained that to them, that's not right. The district court didn't have to explain, well, other circuits have accepted there might be some other element, but under Seventh Circuit law, there is no willfulness element. The district court stated, here are the three elements the government would have to prove for 287. You knowingly submitted a false claim to the IRS. That's not a complicated concept. And as Judge Mannion pointed out, these defendants are well aware of the tax laws and how to get around them. This was not complicated for them to understand. All in all, we think the evidence shows and the colloquy shows that these defendants voluntarily pled guilty, and the court did not clearly err in reaching that conclusion. Unless this court has any further questions, we would rest on our briefs and ask that you affirm. Thank you. Anything further, Mr. Henderson? No, thank you, Your Honor. Well, thank you, and Mr. Schlesinger, we appreciate your willingness to accept the appointment and your assistance to the court as well as your client. The case is taken under advisement.